## In re Greater Pottsville Industrial Development Corporation

468

*John G. Callender*, for petitioners.

DALTON, J., May 26, 1952.—The purposes for which this corporation is sought to be formed are laudable, but this court has no power to approve the application for the charter unless the provisions of the articles of incorporation are in compliance with law. The proposed articles of incorporation violate the statute law of this Commonwealth in a number of respects.

The eighth paragraph of the articles provides as follows:

"8. The corporation will have no property, real or personal, at the beginning of its corporate existence."

This provision must be read in the light of the Nonprofit Corporation Law of May 5, 1933, P. L. 289, sec. 203(8), 15 PS §2851-203. It requires the articles of incorporation to set forth "the amount of assets, classified as to real and personal property, which the corporation will have to start its corporate functions". In the annotations to Pa. Corp. Laws, 1933, prepared by E. Russell Shockley, special deputy attorney general, it was said: "This provision does not require a specified amount to be paid into the treasury, but it does, by implication, require some amount". Prior law was in accord with this view. See Hall Asso. of Washington Camp, 10 Dist. R. 621, 622, which held that there should be a reasonable payment into the treasury.

The ninth paragraph of the articles provides as follows:

"9. Membership in the corporation shall include such persons, firms, associations and corporations as shall contribute $250.00 or more to the corporation and such other persons as the board of directors may designate."

Insofar as this paragraph of the articles proposes to authorize membership to "such other persons as the board of directors may designate", it is in clear violation of the act of assembly. Section 601, 15 PS §2851-601, provides:

"Membership in all nonprofit corporations shall be of such classes, and shall be governed by such rules of admission, retention, suspension and expulsion, as the articles or by-laws shall *prescribe*, except that all such rules shall be reasonable, germane to the purpose or purposes of the corporation, and *equally* enforced as to all members of the same class. Unless otherwise provided by the articles or by-laws, there shall be one class of members whose voting and other rights and interests shall be equal."

The distinction between that which is "prescribed" and that which is merely authorized or discretionary was pointed out in Commonwealth ex rel. Blattenberger v. Ashe, Warden, 133 Pa. Superior Ct. 509, 511-512, where it was said:

" 'Prescribe' is defined 'To lay down as a rule or direction to be followed; to . . . ordain, direct, enjoin. (Oxford Dictionary) ; to lay down authoritatively as a guide, direction, or rule of action; to impose as a peremptory order; to dictate; direct; ordain' (Webster's New International Dictionary)." In Webster's Dictionary of Synonyms, page 645, it is said:

"Prescribe stresses dictation, especially by one in command and usually implies that the aim is to give explicit directions or clear guidance to those who accept one's authority or are bound to obey one's injunctions."

It is clear that paragraph 9 of the articles does not "prescribe" the qualifications and rules of admission of "other persons". Instead of spelling out a definite rule of action to guide the board of directors, it leaves the matter entirely to their uncontrolled will. That is not what the law contemplates. Cf. In re Skandinaviska Brodaforeningen Svea, 3 Dist. R. 235. Furthermore, it is obvious that the uncontrolled will of the directors would be the direct antithesis of a "rule", which the statute requires to be "equally enforced".

The twelfth paragraph of the articles provides:

"12. The board of directors shall have the power, without the approval of the members, or any other body, to make, alter, amend and repeal the bylaws of the corporation."

As this paragraph is presently drawn, it purports to give absolute and uncontrolled power to the board of directors to make, alter, amend and repeal the bylaws. This violates section 401 of the act as amended, 15 PS §2851-401, which provides:

"The members of a nonprofit corporation shall have the power to make, alter, amend, and repeal the by-laws of a nonprofit corporation, but the authority to make, alter, amend, and repeal such by-laws may be expressly vested by the articles or the by-laws in the board of directors, *subject always to the power of the members to change such action.*"

If the twelfth paragraph of the articles contained a provision spelling out the reserved power of the members with respect to the bylaws, it would be unobjectionable.

It is with much reluctance that we must refuse this charter. We are aware of its urgent and immediate necessity. We regret very much the delay but it is better to have some delay than a corporation with a defective and illegal foundation. It is our duty and

our most unpleasant duty to refuse this charter because of the unlawful provisions in the articles as aforesaid.

And now, May 26, 1952, the application for a charter is refused without prejudice to a new application.